**SINGH, SINGH & TRAUBEN, LLP**
**MICHAEL A. TRAUBEN** (SBN: 277557)
  mtrauben@singhtraubenlaw.com
**THOMAS K. RICHARDS** (SBN: 310209)
  trichards@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

*Attorneys for Plaintiff*
INDIGENOUS PROPHECY LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIGENOUS PROPHECY LLC, a California limited liability company,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PATRICK CHEH, an individual, and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No.: 2:26-cv-1936<br><br>**COMPLAINT FOR:**<br><br>　1. **DECLARATORY RELIEF – NON-INFRINGEMENT;** *and*<br>　2. **17 U.S.C. § 512(f) MISREPRESENTATION;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Indigenous Prophecy LLC ("**Indigenous Prophecy**" or "**Plaintiff**"), by and through its undersigned counsel, hereby files its Complaint against defendant Patrick Cheh ("**Cheh**" or "**Defendant**") and DOES 1 through 10, inclusive, and in support thereof alleges as follows:

## NATURE OF ACTION

1. This action arises out of Cheh's unlawful efforts to censor free speech and illicitly extract unearned monies through the intentional misuse of copyright law.

2. Plaintiff produced and owns the rights to a documentary film entitled *The Man Who Saves the World?* (the "**Documentary**"), as well as the official trailer for the Documentary (the "**Trailer**").

3. Cheh has attempted to suppress the Trailer by serving bad faith and misleading Digital Millennium Copyright Act ("**DMCA**") takedown notices to, among other platforms, YouTube and Vimeo, unlawfully demanding that those platforms cease exhibiting the Trailer.

4. Coerced by Cheh's baseless blanket threats, YouTube and Vimeo have in fact removed the Trailer from their platforms as a matter of course, with trickle-down effects including broken links on theater websites and press outlets such as The Hollywood Reporter, Variety, People, First Showing, and Indiewire.

5. Cheh served these baseless DMCA takedown notices under the guise of alleged copyright infringement because the Documentary and Trailer use short clips of certain footage filmed in Colombia in March 2022 (the "**Footage**").

6. However, as Cheh is well aware, Plaintiff's sole member and owner, Gabriel Polsky ("**Polsky**"), not only helped fund and capture this Footage but also obtained a license to use the Footage through a fully executed attachment agreement signed by Joseph Nittolo ("**Nittolo**"), one of Cheh's other co-authors and co-owners of the Footage (the "**Attachment Agreement**"). Pursuant to the Attachment Agreement, Nittolo represented and warranted that he owned all necessary rights, title, and interests in and to the Footage and assigned all rights, title, and interests in and to the Footage to Plaintiff. Further, the

Attachment Agreement contains representations and warranties stating the Footage does not infringe upon the intellectual property rights (including copyright) of any third party.

7. In reality, Cheh's actual motivation in sending the DMCA takedown notices was not his manufactured and spurious claims of "copyright infringement". Rather, Cheh intentionally misused the DMCA takedown process to suppress the Trailer as leverage to unlawfully extract unearned monies from Plaintiff.

8. As Cheh's singular intention in reflexively dispatching the DMCA takedown notices was to suppress Plaintiff's expressive activities in distributing the Trailer to the public, Cheh did not undertake the requisite good faith inquiry into whether Plaintiff had the right, including through a valid license, to use the Footage in the Trailer prior to serving the DMCA takedown notices.

9. Aware that he did not conduct or intend to conduct the requisite analysis before serving the DMCA takedown notices, Cheh's DMCA takedown notices were served in bad-faith and solely to cause YouTube and Vimeo to remove the Trailer from public exhibition for purposes of suppressing Plaintiff's speech and leveraging that suppression to illicitly extract monies from Plaintiff.

10. Cheh's censorious misuse of copyright law to subvert free speech has effectively removed the Trailer from meaningful public exhibition, causing substantial harm and damage to Plaintiff, including with respect to Plaintiff's downstream revenues.

## THE PARTIES

11. Plaintiff Indigenous Prophecy is a limited liability company organized and existing under the laws of the State of California. Plaintiff Indigenous Prophecy is a media production company specializing in documentary films, with its principal place of business in Los Angeles, California.

12. Plaintiff's sole member and owner, Polsky, is a citizen and resident of the State of California domiciled in Los Angeles County, California.

13. Defendant Patrick Cheh is an individual residing in Los Angeles County, California.

**JURISDICTION AND VENUE**

14. This Court has original subject matter jurisdiction over this claim pursuant to the Copyright Act (17 U.S.C. §§ 101 *et seq.*), 28 U.S.C. §§ 1331, 1338 and 2201(a) and supplemental jurisdiction over any related state claims under 28 U.S.C. § 1367.

15. Defendant is subject to the general and specific jurisdiction of this Court.

16. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c), and pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this Judicial District, including with respect to Defendant's tortious interference with Plaintiff's contractual dealings and exploitation of its intellectual property, and Defendant resides and conducts ongoing and continuous business activities in this State and District.

**FACTUAL ALLEGATIONS**

17. In or around 2023, Plaintiff developed and produced the Documentary.

18. The Documentary documents and depicts the subject matter related to the Kogi people in northern Colombia, chronicling cultural, environmental, and prophetic themes.

19. Plaintiff also produced the Trailer, which promotes the Documentary and sparingly utilizes short clips of the Footage to demonstrate specific points of commentary and criticism.

20. Prior to allowing the Trailer to be released to the public, Plaintiff obtained the Footage pursuant to a fully executed Attachment Agreement with Nittolo ("**Nittolo**"), pursuant to which Nittolo represented and warranted that he owned all necessary rights, title, and interests in and to the Footage.

21. The Attachment Agreement deemed the Footage a "work-made-for-hire" for Plaintiff's predecessor in interest, Gabriel Polsky Productions, Inc. ("**GPP**"), or alternatively assigned all rights therein to GPP (which, in turn, assigned all rights to Plaintiff).

22. Upon information and belief, Cheh nebulously claims to have assisted in

Singh, Singh & Trauben, LLP

financing certain aspects of the creation of the Footage, but has provided no valid, tangible evidence of copyright ownership therein.

23. Upon information and belief, Cheh is a sophisticated individual with experience in film financing and is familiar with copyright law, including the Digital Millennium Copyright Act's Section 512 "good faith" requirements.

24. Cheh knew, or should have known, the precise contours of the analysis he was required to undertake prior to issuing misleading DMCA takedown notices.

25. Nonetheless, on or around November 14, 2025, and December 3, 2025, Cheh sent correspondence to Plaintiff alleging unfounded claims of sole and exclusive copyright ownership in the Footage and accusing the Trailer of infringement.

26. Cheh served, or caused to be served, DMCA takedown notices to YouTube and Vimeo, demanding that those platforms immediately remove the Trailer under the guise of copyright infringement.

27. Specifically, on or around February 13, 2026, Cheh's DMCA takedown notice caused the takedown of the official Trailer on YouTube (titled "The Man Who Saves The World Official Trailer").

28. On or around February 18, 2026, Cheh's DMCA takedown notices also caused the takedown of the Trailer on the Rotten Tomatoes & Fandango YouTube channel and the IGN YouTube channel.

29. Cheh served these DMCA takedown notices despite his knowledge that Plaintiff had obtained a valid assignment and license to the Footage pursuant to the Attachment Agreement.

30. Before dispatching the DMCA takedown notices, Cheh failed to consider in good faith the issue of Plaintiff's license and assignment. Indeed, it appears Cheh took deliberate actions to avoid learning that the Trailer's use of short clips of the Footage was licensed and non-infringing.

31. Despite repeated communications from Plaintiff's counsel, including letters dated December 5, 2025, and December 23, 2025, advising Cheh of the Attachment

Agreement and the lack of basis for his purported claims, Cheh intentionally ignored these overtures intended to address his purported concerns and proceeded with the false and misleading DMCA takedown notices.

32. Cheh's perfunctory claims, coupled with his refusal to provide evidence or engage substantively, strongly indicate that his communications were nothing more than a sham attempt at superficial compliance with his duties to inquire as to non-infringement.

33. In sum, Cheh did not conduct the requisite good faith analysis of the non-infringement issues here before serving the DMCA takedown notices. If Cheh had reviewed the Trailer and the Attachment Agreement (of which he was made aware), he could not have formed a subjective good faith belief that the Trailer's use of the Footage constitutes copyright infringement.

34. This is likely because Cheh's motivation has nothing to do with purported "copyright infringement", and everything to do with attempting to suppress the Trailer for personal reasons unrelated to legitimate copyright concerns, abusing the DMCA process to illicitly extract monies from Plaintiff to which Cheh is not entitled and to silence protected expression under the First Amendment.

35. This is quintessential censorship of free speech, with Cheh's bad-faith DMCA takedown notices embodying a censorious abuse of the DMCA takedown notice process.

36. Upon information and belief, by authorizing the DMCA takedown notices, Cheh affirmed under penalty of perjury that his notices of infringement were accurate and that he was authorized to make the infringement claims thereunder.

37. Upon information and belief, the DMCA takedown notices tracked the language specified for a notice of claimed infringement under Section 512(c)(3) of the DMCA.

38. Upon information and belief, YouTube and Vimeo treated the demands as requests for takedown pursuant to Section 512(c)(3) of the DMCA.

39. As a result, on or around the dates specified above, YouTube and Vimeo removed the Trailer from their platforms, informing Plaintiff that they cannot be involved

in intellectual property disputes.

40. The removed official Trailer on YouTube was linked to all theater websites and press outlets (including The Hollywood Reporter, Variety, People, First Showing, and Indiewire), resulting in broken links and further harm to the promotion and distribution of the Documentary.

41. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## COUNT I
## DECLARATORY RELIEF – NON-INFRINGEMENT
### (*By Plaintiff as Against Defendant*)

42. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43. Pursuant to 28 U.S.C. § 2201 and 17 U.S.C. § 101 *et seq.*, this Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

44. An actual controversy has arisen and now exists between Plaintiff and Defendant as to whether Plaintiff's use in the Trailer of brief excerpts of the Footage to illustrate various viewpoints asserted in the Trailer by the narration and also as expressed by various interview subjects, which copyrights are, upon information and belief, claimed by Cheh, constitutes infringement.

45. Plaintiff's use of the Footage in the Trailer is licensed and non-infringing, including pursuant to the Attachment Agreement.

46. Plaintiff therefore seeks a judicial declaration and determination that Plaintiff's use of the Footage, to which copyrights are, upon information and belief, claimed by Cheh, does not constitute infringement.

47. A declaration of rights is further necessary and appropriate to enable Plaintiff to instruct YouTube and Vimeo to resume exhibition of the Trailer.

48. Considering the facts and circumstances described above, Plaintiff's use of the Footage is non-infringing as a matter of law. Accordingly, Plaintiff is entitled to a declaration that its use was non-infringing on that basis.

49. Plaintiff is entitled to an award of costs, including its attorney's fees, pursuant to 17 U.S.C. § 505.

## COUNT II
## 17 U.S.C. § 512(F) MISREPRESENTATION
*(By Plaintiff as Against Defendant)*

50. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 49 as if fully set forth herein.

51. The Trailer does not infringe any copyright owned or administered by the Defendant.

52. Plaintiff's use of the Footage in the Trailer is self-evidently non-infringing pursuant to the valid assignment and license under the Attachment Agreement. This is in part because the Trailer's use of brief excerpts of the Footage is authorized by the Attachment Agreement, which assigns all rights in the Footage to Plaintiff and represents and warrants no third-party infringement.

53. Cheh had actual subjective knowledge that the contents of the Trailer did not infringe any copyrights on the dates he sent the DMCA takedown notices.

54. With this actual subjective knowledge, Cheh acted in bad faith when he sent the DMCA takedown notices, knowingly and materially misrepresenting that he had definitively concluded that the Trailer was infringing.

55. Had he been acting in good faith, there would have been no substantial doubt that the Trailer did not infringe any copyrights on the dates Defendant Cheh sent the DMCA takedown notices.

56. Defendant Cheh violated 17 U.S.C. § 512(f) by knowingly and materially misrepresenting that the Trailer infringed his copyrights.

57. As a direct and proximate result of Defendant Cheh's actions, Plaintiff has been injured substantially and irreparably. Such injury includes, but is not limited to, lost revenues and profits associated with the suspension of distribution and promotion of the Trailer and Documentary, and harm to its free speech rights under the First Amendment, with damages exceeding $1,000,000.00, including lost theater bookings, disrupted press coverage, loss of downstream revenues, and severely diminished audience engagement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Indigenous Prophecy respectfully requests that this Court enter judgment in its favor and as against Defendant Cheh as follows:

1. That the Court enter Declaratory Judgment, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the Copyright Act 17 U.S.C. §§ 101, *et seq.*, that Plaintiff's use of the Footage in its Trailer is non-infringing;
2. For damages according to proof, including compensatory and statutory damages under 17 U.S.C. § 512(f);
3. For temporary, preliminary, and permanent injunctive relief enjoining Defendant from issuing further DMCA notices or otherwise interfering with the Trailer or Documentary, and directing all applicable third party platforms to reinstate the Trailer;
4. For costs and reasonable attorney's fees pursuant to 17 U.S.C. § 512(f), other portions of the Copyright Act including Section 505, or otherwise as allowed by law;
5. For punitive damages based upon Defendant's willful misconduct; *and*
6. For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues in this action so triable.

| | |
|---|---|
| DATED: February 23, 2026 | Respectfully Submitted, |
| | **SINGH, SINGH & TRAUBEN, LLP**<br>**MICHAEL A. TRAUBEN** |
| | By:  /s/ Michael A. Trauben<br>     Michael A. Trauben |
| | *Attorneys for Plaintiff*<br>INDIGENOUS PROPHECY LLC |